# Louisville & Nashville Railroad Co. v. Mobile, Jackson & Kansas City Railroad Co.

## *Bill for Injunction.*

1. *Unauthorized construction of railroad in a street may be en-joined.*—It cannot be doubted that an unauthorized obstruc-tion of a street in an incorporated town or city is a public nuisance; and it is equally clear that an unauthorized con-struction of a railroad in a street is a public nuisance that may be enjoined.

2. *Same; by whom injunction obtained.*—Where a public nuisance exists by the unauthorized obstruction of a street in a town or city or is in process of creation by the construction of a railroad in such street a bill may be filed and relief by way of injunction be had by any person who would sustain special injury on account of the nuisance.

3. *Act of February 6, 1895, provides for police regulations; not for grants of franchise.*—The provisions of the act of the general assembly of February 6, 1895, amendatory of certain sections of an act entitled "An act to incorporate the Port of Mobile and to provide for the government thereof," which confer au-thority "to make ordinances concerning rights of way, regula-tion of street cars, street railways and all other railroads," are intended to provide police regulations, and not to author-ize a grant of any right or franchise in the street. There is

[L. &. N. Railroad Co. v. Mobile, Jackson & Kan. City Railroad Co.]

in the provision no unequivocal and express grant of power to create rights of way, nor does such grant of power arise by implication; and that which is not unequivocally granted in the charter of a city must be taken to be withheld.

4. *Public nuisance; existence of does not authorize creation of additional nuisance.*—It is no defense to a complainant's bill brought to prevent the building of a railroad in the public street of an incorporated city on the ground that it would be a public nuisance, and would injure complainant's abutting property, that complainant is operating a railroad along the same street, since the existence of a public nuisance, though caused by complainant, cannot justify or excuse the creation of an additional nuisance or destroy the right of complainant to have his abutting property protected from increased damage.

5. *An agreement of a railroad company that another company might cross its track; no waiver of its right as abutting proprietor.*—The contention that a complainant obtained the grant from a city to lay additional tracks of its railroad along a street upon condition that it would consent for the defendant to cross its track with its railroad without compensation for crossing, is without merit in a controversy between complainant and defendant respecting the authority of the city to grant the right of way to the defendant to build its road, since if the city had no authority to grant the franchise the defendant could derive no right or benefit from the contract of the complainant with the city to permit defendant to cross complainant's track without compensation, nor was such an agreement a waiver of complainant's right as an abutting proprietor on said street to object to the creation of a public nuisance on said street injuriously affecting the rights of complainant.

APPEAL from Mobile Chancery Court.
Heard before Hon. W. H. TAYLOE.
The facts are stated in the opinion.

GREGORY L. SMITH and JOEL W. GOLDSBY, for appellant.—(1). The unauthorized construction of a railroad in a street is a public nuisance that may be enjoined *People v. New York,* 43 Barb. 73; *Scheurmeirer v: St. Paul & P. R. Co.,* 10 Minn. 82; *Stowers v. Pos. Tel. Co.,* 9 So. Rep. 357. (2). And injunction may be obtained by any person who may injured.—*Mayor &c. v. Rogers,* 10 Ala. 47; *Whaley v. Wilson,* 112 Ala, 629. (3). Ordi-

nance of City of Mobile granting right to lay tracks in street void—no authority, in charter.—*Perry v. N. O., M. & C. R. R. Co.*, 56 Ala. 426; *Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 120; *Costello v. State*, 108 Ala. 49.

McINTOSH & RICH, *contra*, contended that the grant to Mobile, Jackson & Kansas City R. R. Co. by the city of Mobile was authorized and valid; and that appellant had acquiesced in the grant.

DOWDELL, J.—The appellant, the Louisville & Nashville Railroad Co., filed its bill in the chancery court of Mobile county, seeking to enjoin the appellee, the Mobile, Jackson & Kansas City Railroad Co. from constructing and laying its track upon and along Water Street, a public highway in the city of Mobile. The equity of the bill is predicated upon the averments that the complainant company is now and has been for many years operating its railroad as a common carrier of passengers and freights along and upon said Water Street, under a franchise granted by the city of Mobile, and that it, the complainant company, is the owner in fee of the abutting land on the east side of said Water Street, a part of which is situated north of Eslava Street and part south of that street, and also owned certain lots in what is known as the Bernoudy tract at the foot of the south terminus of Water Street. There are also averments of occupancy by the complainant company of certain other parts of said Water Street, with its tracks and turn-outs for railroad purposes, but the necessities of the case do not require any more particular statement of these allegations; that the defendant company proposes to build and construct its track along and upon said Water Street, and east of the center of said street, and over and across the lands of complainant in the Bernoudy tract at the terminus of said Water Street, without condemnation proceedings, and without even paying just comepnsation therefor to complainant; that the defendant intends to do this work in a single night and avoid an injunction. It is also averred that the building of defendant's railroad upon and along said street, and the operation of its locomotives and cars over the same,

will materially obstruct said street as a public highway
for wagons, drays and other vehicles, for which purposes
it has been and is now used by the public, and thereby
constitute a public nuisance in said street.     It is also
averred in the bill that the contemplated action of the
defendant company is under a pretended franchise from
the city of Mobile to the defendant company, granting it
the right to construct its railroad along said street, and
to operate its locomotives and cars over the same, and
it is charged and averred that the city of Mobile had
no power or authority under its charter to grant any
such right or franchise as that claimed by the defend-
ant, and that the ordinance passed by the city granting
the franchise is void for want of authority under the
charter to enact the same.    While the answer of the de-
fendant company denies all intention or purpose of sur-
reptitiously constructing its railroad along said street,
or of taking plaintiff's property for purposes of right of
way without first paying to complainant just and fair
compensation therefor, it admits that the defendant in-
tended and proposed to exercise its right to complete and
build its railroad along and upon said street under the
franchise granted it by the city of Mobile under an ordi-
nance of October 8th, 1895, wherein defendant was
granted the right of way for its track in Water Street
from the southern end of said street, north to the inter-
section of Church Street, a copy of which said ordinance
is attached as an exhibit to the answer.    But it is averred
in the answer that before doing so it was the intention
of the defendant to first pay to the complainant just and
fair compensation for any property of the complainant
taken by the defendant for its right of way, and also to
pay all damage that might be done to the complainant's
property by the building and operating of its, the said
defendant's, proposed railroad.

The case was heard in the court below upon the plead-
ings and proof and a final decree was rendered dismiss-
ing the complainant's bill.    There was no proof that the
defendant company intended to construct the proposed
track in a surreptitious manner and without first paying
a just compensation for any property of complainant
that might be taken by the defendant, and this theory

of the case might be regarded as having been abandoned by the complainant. There was much testimony *pro* and *con* as to whether the occupancy of Water Street by both companies with their railroads would practically destroy it as a public highway for ordinary and common uses, but for the purposes of this case we deem the determination of this issue of fact unimportant. It is not disputed that the building of the proposed railroad in said street would amount to such an obstruction of same as to impair the free and ordinary use thereof by the public generally as a public highway.

The ownership by the complainant as an abutting proprietor of property along said street, and lots at the terminus of said street in the Bernoudy tract, as charged in the bill, is shown without contradiction. The case as thus presented, in one of its phases, under the pleadings and proof, is that of an adjacent proprietor asking to enjoin a defendant from permanently obstructing a public street in such a manner as to impair the usual and customary uses of the same by the public and of special injury and damage to complainant, or, in other words, to enjoin the doing of that which would constitute a public nuisance, and specially injurious to the property rights of complainant. It cannot be doubted that an unauthorized obstruction of a street in an incorporated town or city is a public nuisance.—*State v. Mayor and Aldermen of Mobile,* 5 Port. 279; *Costello v. The State,* 108 Ala. 49; *Whaley v. Wilson,* 112 Ala. 629; Wood on Nuisance (3rd ed.), § § 248-50.

We think it equally clear that the unauthorized construction of a railroad in a street is a public nuisance that may be enjoined.—*Schurmeier v. St. Paul & P. R. R. Co.,* 10 Minn. 82; *Theobold v. L. N. O. & T. R. R. Co.,* 6 So. Rep. 230; *Stowers v. Postal Tel. Cable Co.,* 9 So. Rep. 357.

In such cases the bill may be filed and relief by way of injunction be had by any person who would sustain special injury on account of the nuisance.—*Mayor etc. of Columbus v. Rogers,* 10 Ala. 47; *Whaley v. Wilson, supra; Douglas v. City Council,* 24 So. Rep. 745; *Columbus & Western R'y Co. v. Withrow,* 82 Ala. 190, and authorities there cited.

But it is contended by the defendant that the building and operating of its proposed railroad upon and along said Water Street would not be an unauthorized obstruction of that street. This contention of course must rest upon the validity of the city ordinance of October 8th, 1895, granting the right to the defendant company to build its track and operate its trains over said street. The validity of this ordinance must depend upon the power and authority conferred upon the city under its charter to make the grant in question.

The principle is well settled in this State, that in the absence of express power conferred by the legislature, a municipal corporation has no authority to grant a franchise of its public streets and highways for railroad purposes and uses.—*Perry v. N. O. M. & C. R. R. Co.*, 55 Ala. 426; *Port of Mobile v. L. & N. R. R. Co.*, 84 Ala. 120; *Costello v. State, supra.* See also 6 Am. & Eng. Ency. Law, p. 518, and authorities there collated.

Prior to the act of February 6th, 1895, Acts 1894-5, p. 382, the charter of the city of Mobile passed under review in this court upon the question now before us, and it was then determined that the charter conferred no power or authority upon the city to grant rights of way to railroads in its streets.—*Perry v. N. O. M. & C. R. R. Co., supra; Port of Mobile v. L. & N. R. R. Co., supra.*

This brings us to a consideration of the act of February 6th, 1895, above referred to. This act purports to amend certain section of an act entitled, "An act to incorporate the Port of Mobile, and to provide for the government thereof," approved December 10th, 1886. If any power or authority is conferred upon the city by this act to grant rights of way in the streets, it is to be found in section 4, as this is the only section that contains any reference to the subject. Section 4 reads as follows: "Be it further enacted, That in order that its duties may be efficiently performed the said general council shall have full power and authority to make, adopt and declare by-laws or ordinances not in conflict with the laws of this State or the United States which shall have force and effect in said city of Mobile for and concerning the several matters mentioned in this section and therein to provide and declare such fines, penalties and forfeitures,

imprisonment or hard labor within the limitations and restrictions hereinafter provided, as it may deem appropriate; and any person or persons violating or disobeying such by-laws or ordinances may be punished therefor, as provided in such by-laws or ordinances upon conviction thereof before said Mayor who shall have jurisdiction and cognizance of such matters; that is to say, said general council may make, ordain and declare such by-laws and ordinances for and concerning the prevention and removal of nuisances, the prevention and extinction of contagious or infections diseases; water supply; the lighting of streets, avenues and public places; the licensing and regulation of retail liquor dealers and of hackney coaches, carriages, wagons, hacks and drays; the regulation of pawnbrokers; the restraint or prohibition of gambling; the regulation of theatrical and other entertainments and amusements; the establishment, regulation and management of markets; the erection and repairing of bridges, the construction, repairing and regulation of sidewalks, streets, avenues, roads and drains, sewers, pipes and appurtenances or appendants thereto or thereunder, it may also make ordinances concerning the rights of way; regulation of street cars, street railways and all other railroads; the storing and handling of gunpowder, dynamite, oil and all other inflammable or hazardous substances and may establish and regulate magazines within or without the city and may own and regulate property inside or outside of its limits for magazines, pest houses, quarantine and other purposes; the establishment and regulation of fire wards, fire companies and fire departments; the establishment and regulation of fire limits; concerning the sinking and repairing of wells; erection and repairing of pumps; the removal or pulling down of houses, fences and other structures to prevent the spread of fire and to extinguish the same; the regulation of partition and other fences and of partition and other walls; the prevention of disorderly assemblies and houses; the establishment, prevention and regulation of city cemeteries, whether within or without the city limits; and also such by-laws and ordinances as may require vagrants, idlers, disorderly or dangerous and suspicious persons, all persons of evil

life or ill fame, and such as have no means of support, or likely to become chargeable to the city of Mobile or to Mobile county as paupers, all persons found drunk in or about the streets or loitering in or about tippling houses, or who can show no reasonable cause for not having an occupation or employment or business, or who have no fixed place of residence, or who cannot give a good account of themselves, or all such as may be grossly indecent in language or behavior publicly in the streets, and all prostitutes or such as lead a notoriously lewd or licentiously course of life, to leave the city or give bond and security, to be approved by said mayor, for their good behavior for a reasonable time and for indemnity against any charge for their support by said city of Mobile, said council may provide upon their failure or refusal to give such bond and security or leave the city, for their condemnation to labor under the direction of said general council for a limited time, not to exceed three calendar months, unless such bond and security should be given sooner; *Provided,* that no fines or penalties imposed by such ordinances or by-laws shall exceed fifty dollars for any offense, and *provided further,* that any person failing to pay any fine or penalty imposed on him under and by authority of this act, may be sentenced to hard labor for such reasonable time, not exceeding three calendar months for any one offense as may by the mayor be deemed equivalent in punishment to such fines and penalty and the costs of the case, considering also the cost of keeping and maintaining such persons; * * * "

As argued by counsel for appellant, it is obvious that these provisions are intended to provide police regulations, and not to authorize a grant of any right or franchise in the street; this seems manifest, both from the character of all other matters associated in the section, and from the fact that when it contemplates the erection of anything, such as bridges and sidewalks, it expressly says so, as well as from the provisions for the enforcement of the ordinances by fines and imprisonment. The language of the act, "it may also make ordinances concerning the rights of way, regulation of street cars, street railways and all other railroads," would seem to

exclude the idea of the grant of new rights of way. The charter restricts the power to make ordinances "concerning *the* rights of way," i. e., to *particular* rights of way, such as already exist, or such as thereafter may be legally created. There is manifestly no unequivocal and express grant of power to create rights of way contained in the provision, nor do we think that such grant of power under the act arises by necessary implication.

In *Grand Lodge of Ala. v. Waddill,* 36 Ala. 318, this court said: "Grants of power to corporations, unlike the grants of individuals, are to be strictly construed in favor of the government and against the grantee. Corporations can claim nothing that is not clearly given. Ambiguities operate against them. In the construction of every charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation;" citing *Penn. R. R. Co. v. Canal Com'rs,* 21 Penn. 9; *Richmond R. R. Co. v. Louisa R. R. Co.,* 18 Howard 81; Sedgwick on Stat. & Const. Law, 338-42.

To say the least of it, the grant of power to create rights of way by the act in question is involved in doubt, and that which is not unequivocally granted in the charter of a city must be taken to be withheld.—*Port of Mobile v. L. & N. R. R. Co.,* 84 Ala. 115; *Costello v. State, supra; Birmingham & Pratt. Min. St. R'y Co. v. Birmingham St. R'y Co.,* 79 Ala. 471.

From the foregoing authorities, our construction of the act of February 6th, 1895, leads to the conclusion that under it the city had no authority to grant rights of way to railroads over its streets. It follows, therefore, that the ordinance of the city under which the defendant claimed its franchise and right to construct its railroad in Water Street, was without legislative authority and therefore null and void.

On the undisputed facts as to the complainant's ownership of lots abutting the said street, and the special injury to result to complainant as such attingent property owner by the constructing and operating of defendant's proposed line of railroad, the complainant was entitled to the injunctive relief sought.

It is no defense to complainant's bill that the complainant itself is operating a railroad along said street.

[L. &. N. Railroad Co. v. Mobile, Jackson & Kan. City Railroad Co.]

If it be conceded that the complainant is operating a railroad along said street without authority, thereby creating a public nuisance, we fail to see wherein that could justify or excuse the defendant in creating an additional nuisance.   There is no element of estoppel under the facts.   If the servitude laid on the streets by the complainant in the laying of its railroad tracks and the operation of its trains thereon injuriously affects the abutting property of the complainant, the additional servitude proposed by the defendant would most naturally tend to increase the damage.   Besides, the fact that complainant is injuriously affecting its property cannot prevent it from complaining of an injury done to its property by another.   Nor do we think there is any merit in the contention that the complainant obtained a grant from the city to lay additional tracks along said streets upon condition that it would consent for the defendant to cross its track with defendant's road without requiring compensation for such crossing.   If the city had no authority to grant the franchise, the defendant could derive no right nor benefit from the contract of the complainant with the city to permit defendant to cross complainant's tracks in said street without compensation, nor was such agreement a waiver of complainant's right as an abutting proprietor on said street to object to the creation of a public nuisance on said street injuriously affecting the rights of complainant.

The view we have taken of the case, renders it unnecessary to consider other questions discussed by counsel.

The decree of the chancery court is reversed and the cause remanded.