GAUSS *v.* FIRST WAYNE NATIONAL BANK OF DETROIT.

1. REFORMATION OF INSTRUMENTS—CONTRACTS—EQUITY—FRAUD OR MISTAKE.
   Reformation of written contract is based on equitable principles, making it conform to real agreement between parties; but court may not supply material stipulations omitted from contract, in absence of fraud or mistake.

2. SAME—IMPERFECT CONTRACTS—INTERPRETATION.
   Court may not perfect contract which parties themselves have left imperfect, and may only interpret contract as made.

3. SAME—FRAUD OR MISTAKE NECESSARY.
   In absence of fraud or mistake, court is without jurisdiction to reform contract.

4. SAME—DISMISSAL.
   Cross-bill to reform contract was properly dismissed, where no fraud or mistake was alleged or proved.

Appeal from Wayne; Sample (George W.), J., presiding. Submitted June 7, 1933. (Docket No. 47, Calendar No. 36,931.) Decided August 29, 1933.

Bill by Charles Gauss against First Wayne National Bank of Detroit for specific performance of a contract relative to the purchase of securities. Cross-bill by defendant against plaintiff and others, for apportionment of the securities among cross-defendants or for deficiency decree upon the sale of said securities. Decree for plaintiff vacated. Cross-bill dismissed. Defendant appeals. Affirmed.

*Mark L. Rowley* (*Henry B. Graves,* of counsel), for plaintiff.

*Lightner, Hanley, Crawford & Dodd (Clifford M. Toohy* and *George D. Haller,* of counsel), for defendant.

*G. Leslie Field* and *E. Reed Hunt,* for cross-defendants Van Paris and Frank H. Bessenger, Inc.

POTTER, J.   October 23, 1931, plaintiff filed a bill for specific performance of a written contract, a copy of which appears in the margin,* and for an

---

* "Memorandum of agreement, made this 24th day of October, 1930, by and between the Guaranty Trust Company of Detroit, a Michigan Trust Company, first party, hereinafter called the 'trust company,' The American State Bank, a Michigan banking corporation, second party, hereinafter called the 'bank' and the undersigned who are directors and stockholders, or stockholders, simply, of the Guaranty Trust Company of Detroit, third parties, hereinafter called the 'stockholders,'

"Witnesseth:

"Whereas, it has been arranged between the trust company and the bank that the latter shall presently purchase from the former real estate mortgage bonds and notes now owned by the former aggregating $200,000 principal amount, at par plus accrued interest, with the understanding that the stockholders shall repurchase the same on or before one year from the date hereof on the terms hereinafter set forth,

"Now therefore, in consideration of the mutual undertakings of the parties, particularly such purchases by the bank from the trust company, and the repurchase undertakings by the stockholders, it is agreed as follows:

"1.   The bank agrees to purchase immediately from the trust company $200,000 in amount of principal of such bonds and notes, as per list thereof hereto attached, and to pay therefor par plus accrued interest.

"2.   The stockholders, subscribers hereto, severally agree to and with the bank to repurchase from it on or before one year from the date hereof the amounts of such bonds and notes respectively set opposite their signatures hereto, or their proportionate amount, on the basis of the amounts set opposite their signatures of such bonds and notes then remaining unsold or otherwise disposed of as herein contemplated, such repurchases to be at par plus accrued interest.

"(a)   It is understood and agreed that each stockholder, subscriber hereto, may at any time purchase the amount of bonds and notes, at par plus accrued interest, equal to his proportionate undertaking hereunder, and by such purchase be relieved of any further liability hereunder, the bank in such event to give a proper written discharge.

"(b)   It is understood and agreed that the trust company, shall use its best endeavors to sell or otherwise dispose of said bonds

order directing defendant bank to convey and deliver to him the bonds and notes which he designated. The bank filed an answer in the nature of a cross-bill naming all of the persons who executed as purchasers the contract as defendants. The answer and cross-bill of the bank denied plaintiff's right to select the bonds and notes designated by him, because such selection by plaintiff would affect the rights of the bank and other guarantors. By

to the investing public within one year from the date hereof; and that it shall make no charge for its services in that regard; such sales shall be at par plus accrued interest (if any concessions are made by the trust company on such sales, it will itself absorb them); proceeds of such sales shall be forthwith paid over to the bank to apply in reduction of the amount invested by it in bonds and notes as aforesaid, and the several obligations of each individual stockholder shall be thereupon proportionately reduced.

"(c)    It is understood that on purchase by stockholders of such bonds or notes the trust company will allow its regular concessions, and it agrees that it will itself on request pay the same.

"(d)    On final settlement with each stockholder, subscriber hereto, during or at the end of said one-year period, if there is not available bonds or notes in the proper denominations to apportion to such stockholder his proportionate amount, then he shall purchase an amount in denominations available nearest his proportionate amount, and the difference, over or below, shall be adjusted in cash. If as a result of all such adjustments, there is a deficit to the bank, the trust company agrees to forthwith reimburse it.

"3.    It is understood that during said one-year period, some of said bonds and notes will become due and payable, and certain bonds or notes may become in default through nonpayment of accruing interest thereon; also, that it may be advisable for the trust company during such period to make refinancing arrangements involving certain of the issues in which are included some of said bonds or notes; and in any of such events, it is agreed that said trust company shall substitute for bonds or notes thus falling due or in default, or which may be involved in such refinancing, other like bonds or notes, interest to be adjusted at the time of such exchange.

"4.    Should any stockholder, subscriber hereto, make default in his repurchase undertaking hereunder, it is understood and agreed that the bank may at any time, without notice, sell the proportionate amount of bonds or notes, of such delinquent stockholder at the best price obtainable, and charge any loss to such delinquent stockholder, who agrees to forthwith pay the same to said bank, together with interest at six per cent.

"5.    It is expressly understood and agreed that repurchase of the full amount of said $200,000 of bonds and notes shall be undertaken by the stockholders, by their several subscriptions hereto, on

way of cross-bill it asked the court apportion the
bonds and notes among the parties to the agreement,

or before the 7th day of November, 1931; otherwise, this agreement
to be void and of no effect. It is expressly understood that the
obligations of the stockholders, subscribers hereto, are several, and
not joint, and that each is bound only for the amount by him sub-
scribed, or his proportionate amount thereof in the event of re-
duction of such liability by sale or other disposition of bonds as
herein contemplated.

"In witness whereof, first and second parties have caused their
corporate name to be hereto subscribed by their duly authorized
officers, and third parties have severally subscribed their names here-
to, with the amount of their repurchase subscriptions set opposite, all
as of the day and year first above written.

"GUARANTY TRUST COMPANY OF DETROIT,
"By F. E. QUISENBERRY,
Its President.
"AMERICAN STATE BANK,
"By.....................,
Its President.

| "Name | Amount |
|---|---|
| "Frank G. Smith | $ 16,000 |
| Frank E. Quisenberry | 3,000 |
| Chas. Gauss | 40,000 |
| Harold R. Martin | 10,000 |
| Vine LaRue Smith | 10,000 |
| Frank C. Teal | 5,000 |
| Adam W. Lind | 5,000 |
| Jno. I. Turnbull | 5,000 |
| Clarence M. Burton | 10,000 |
| Chas. T. Bush | 7,500 |
| Axel E. Michelson | 5,000 |
| Edmund T. Paterson | 2,500 |
| Claude M. Harmon | 5,000 |
| Edward Frolich | 2,000 |
| Conrad H. Smith | 2,500 |
| Henry Wineman, Jr | 3,000 |
| Benj. F. Mortenson | 3,000 |
| Wm. H. Beamer | 5,000 |
| Harold H. Moore | 2,000 |
| Frank W. Kanter | 5,000 |
| N. A. Hawkins | 3,500 |
| Frank W. Kanter | 7,500 |
| J. P. Cummiskey | 7,500 |
| Rex Humphrey | 2,500 |
| Julia M. Barker | 15,000 |
| Harold H. Moore | 5,000 |
| F. H. Bessenger, Inc. | 5,000 |
| Robt. S. Drummond | 5,000 |
| Louis F. Dahling | 1,000 |
| G. Allan McKaig | 1,500 |

$200,000"

in accordance with the amount of their subscriptions; that if the court did not apportion such bonds, then the bank be authorized to sell the same, the net proceeds to be paid to the bank, and if the amount realized was insufficient to pay it the balance due, $194,000, together with interest and expenses, the deficit be charged against the subscribers to said agreement who were made cross-defendants, in proportion to their subscriptions as appearing in the agreement; that the signers of the contract as purchasers be decreed to pay the balance due and defendant have execution therefor. Mr. Van Paris, administrator of the estate of Axel E. Michelson, deceased, filed a motion to dismiss the proceedings, because the contract was not capable of specific performance, but was void for uncertainty and incompleteness. This is conceded, but defendant bank argues that if the contract is incomplete it should be reformed so as to make it complete. But reformation of written contracts is based upon equitable principles, making the written contract conform to the real agreement between the parties; supplying provisions which should have been inserted, or omitting therefrom provisions which were inserted. The basis of reformation is fraud or mistake. The court may not supply material stipulations omitted from a contract in the absence of fraud or mistake. It cannot perfect contracts which the parties themselves have left imperfect. It cannot make contracts for the parties. It may only interpret contracts as made. No fraud or mistake is alleged or proven in relation to the contract in question. The court is without jurisdiction to reform the contract. *Blanchard* v. *Railroad Co.*, 31 Mich. 43 (18 Am. Rep. 142); *Leslie* v. *Smith*, 32 Mich. 64; *Nims* v. *Vaughn*, 40 Mich. 356; *Gates*

v. *Gamble*, 53 Mich. 181; *Thayer* v. *Augustine*, 55 Mich. 187 (54 Am. Rep. 361); *Wardell* v. *Williams*, 62 Mich. 50 (4 Am. St. Rep. 814); *Wheaton* v. *Cadillac Automobile Co.*, 143 Mich. 21; *Holcomb* v. *Czenkusch*, 222 Mich. 376; 13 C. J. p. 525. The trial court arrived at a correct conclusion.

Decree affirmed, with costs.

McDONALD, C. J., and CLARK, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred. FEAD, J., did not sit.